# John A. Flannery *v.* Howard W. Jones and Percy A. Jones, Appellants.

*Public sales—Puffing or fictitious bidding—Fraud—Custom—Evidence.*

On a bill in equity to set aside a public sale, because the owners ran up the price by secret bidding, evidence that puffing or fictitious bidding at public sales was customary is properly rejected.

The employment of puffers by owners, to bid up property selling at auction, with a view to raise the price, is a fraud upon bona fide bidders, and will avoid the sale at the option of the purchaser.

Where an auctioneer at a public sale announces at the instance of the owner that the sale is no sham sale, and that the property will be sold to the highest bidder without reserve, and the auctioneer secretly bids for one of the owners, the sale will be set aside at the instance of a bidder to whom the property was knocked down.

Argued March 1, 1897. Appeal, No. 411, Jan. T., 1896, by defendants, from decree of C. P. Berks Co., equity docket, 1896, No. 647, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Bill in equity to set aside a public sale of lands because of puffing at the sale. Before ERMENTROUT, P. J.

At the trial L. H. Ingram was examined as follows:

By Mr. Meredith, of counsel for defendants: " Q. You say you have been an auctioneer for seventeen years? A. Yes, sir. Q. Is it or is it not the custom to have persons instruct the auctioneer to put bids on property offered at public sale?"

Mr. Ruhl, of counsel for plaintiff: Objected to. What is the purpose?

Mr. Meredith : The purpose is to show that the fact of the defendant having instructed the auctioneer to put a certain bid on the property for him is only what has been done in other similar cases, and is nothing unusual.

Mr. Ruhl : Objected to as immaterial and irrelevant; custom cannot sanction a fraud either in fact or in law.

The Court: Objection sustained; exception for defendant. [1]

The opinion of the court was as follows :

1. Howard W. Jones and Percy A. Jones, the defendants, are brothers, and are the joint owners in fee of a tract of land situate in Unionville, Berks county, containing 18 acres, more or less, with brownstone dwelling, stone storehouse, and other buildings thereon erected.   This property they exposed to sale at public auction on the premises on Saturday, October 26, 1895, and, at their request, the auctioneer announced it would be sold without reserve.

2. The conditions of sale were that the purchaser should pay down immediately after the property was struck down to him, 10 per cent of the purchase-money, and the balance was payable April 1, 1896, upon delivery of the deed.   Upon failure of the purchaser to comply with the conditions of sale, the 10 per cent paid down should become forfeited to the vendors, who should be at full liberty, with or without notice, to resell the property, and if, upon such resale, there should be any deficiency, the purchaser neglecting to comply with the conditions should make good the same to the vendors, and all expenses attending such resale.

3. At the auction the property was struck down to John A. Flannery, the highest bona fide bidder, for the sum of $3,805, and he paid the 10 per cent and signed the conditions of sale.

4. Afterwards John A. Flannery, the plaintiff and bidder, discovering what he conceived to be a fraud upon him, presented this bill seeking to avoid the sale and have his down-money returned, and the agreement entered into in compliance with the conditions of sale canceled, and himself relieved from further obligation thereunder.

5. The auctioneer, L. H. Ingram, employed by the defendants, was their uncle, and Howard Jones, one of the defendants,

secretly instructed him to bid the property up to $4,000. These instructions were given in the absence of his brother, Percy A. Jones, the other defendant, just before the auctioneer began to auction the sale. The auctioneer mentioned specially that the property would be sold without reserve, that it was no sham sale, it would be sold to the highest bidder without reserve. Both Howard and Percy Jones were present during the entire bidding; neither one of them personally put a bid upon the property, but the auctioneer, the uncle of Howard Jones, did the bidding for said Howard Jones without the knowledge of those attending the sale or the bidders. The manner in which the bidding was done was this. The auctioneer started the sale at $3,400; then said "$3,500, thank you, sir; $3,600, thank you, sir; $3,700, thank you; $3,800," and then stopped, and John A. Flannery called out in a tone of voice loud enough to be heard by all the bidders, and actually heard by the defendants, "I will give you $5 more for it." The auctioneer used this language, "Thank you, sir," as if he had actually received these different bids, with the intention of creating the impression in the minds of those attending the sale that various parties were bidding, whereas, in truth and in fact, the only person bidding was the auctioneer himself bidding secretly for Howard W. Jones, the owner. I find the stranger, alleged by the auctioneer to have made one bid, was a myth. When the bid of $3,805 was put upon the property, the auctioneer and both the defendants and their wives, had a consultation among themselves, and then the auctioneer came back and, securing no further bid, knocked the property down to John A. Flannery, the plaintiff. The defendants in their "answer" swear that the instructions given by Howard W. Jones to the auctioneer were to bid on the same for Jones as high as $3,800, and to knock it down to him at that figure should that be the highest bid for the same. "At the hearing," Howard Jones and the auctioneer swear that the instructions were to bid it up to $4,000.

Percy Jones did not go upon the witness stand. These instructions were not carried out, and the bidding took place as hereinbefore found. I find that these instructions were not given in good faith, but were given with the intention of running up the property upon other bidders, done with the intention of puffing and stimulating bidders, and that John A.

Flannery, by this fraudulent bidding, was induced to believe that bona fide bidders were bidding, and was induced to bid more for the property than he otherwise would have done.

I further find that immediately upon the discovery of this fraud, John A. Flannery notified the defendants to return to him the down-money paid; also, that he would not be bound by the said bid or by the articles of agreement so executed by him, but would regard the transaction as void; that the defendants refused to return the money so paid, but insisted upon the performance of the agreement according to the terms thereof, and that thereupon this bill was presented. [2]

6. I further find that at the time of the sale Howard W. Jones was occupying and conducting a general store in the building erected on the said property, and that plaintiff lived about a mile therefrom.

7. I am asked to find as facts the following allegations set forth in the answer, to wit:

"That the said Howard W. Jones, being desirous of becoming the owner of said property in its entirety, offered to buy the interest or title of his said brother in and to said property at private sale for the sum of $1,500, or at the rate of $3,000 for the whole. This offer was not agreed to by Percy, because he thought the property, as a whole, should bring not less than $5,000, and that not agreeing upon the price at which the property should be sold at private sale, decided to offer the same at public sale and sell to the highest bidder, both of us to have the privilege of bidding and buying at said sale should we so desire."

I decline to do so because there was no competent testimony at the hearing to establish these facts. That one brother should offer the property to the other at the rate of but $3,000 for the whole tract, and that the other brother should decline the offer because he considered it worth $5,000; that thereupon the one should instruct the auctioneer to bid $4,000 for him at the sale, and the other, considering it worth $5,000, decline to bid at all, and yet both be willing to offer the property to a stranger at $3,805 seems altogether unlikely and improbable. Even if the facts were established, they would not change the nature of the transaction in point of fact or in law.

### CONCLUSIONS OF LAW.

1. The employment of puffers by owners, to bid up property selling at auction, with a view to raise the price on bona fide bidders, is a fraud upon them, and will avoid the sale at the option of the purchaser.

2. Where an owner of property advertises it for sale at public auction, and offers it upon the condition that the highest bidder shall be the purchaser, and that the property will be sold "without reserve," any secret bid made by such owner will, at the option of the purchaser, invalidate the sale.

3. An auctioneer may fairly and secretly bid for a third person who employs him, but not for the owner.

4. These principles apply equally to a case where all the owners are guilty of such fraud, or where one of them is guilty of the fraud.

5. Whether the property was actually worth in the market the sum bid for it, and whether or not the buyer got the value of his money, does not remove the fraudulent character of the transaction.

In support of the rulings made, it must be admitted that the credibility of witnesses is for the chancellor. He has the best opportunity of judging their credibility by their appearance upon the stand, their actions, and the manner in which they testify, and in this way I have judged of the credibility of the witnesses. The manner of the defendant and the uncle, witnesses, was not of such a character as to make a chancellor place any confidence in their credibility. Even admitting all the facts set forth in the answer of the defendants, they were guilty of legal fraud, such as will vitiate the sale at the option of the purchaser. In the case of Rigg v. Schweitzer, affirmed in 170 Pa. 549, we had occasion to review the law with regard to fraud in bidding, and the authorities are cited therein. I specially refer to Yerkes v. Wilson, 81* Pa. 10, where it was held that the employment of puffers by owners to bid up property selling at auction with a view of raising the price on bona fide bidders, is a fraud upon them, and will avoid the sale at the option of the purchaser, and in the trial of such questions of fraud, every circumstance or fact from which a legal inference of fraud may be drawn is evidence; that a reservation in conditions of a public sale to the owners of an open bid for them-

selves is proper, but the owner having made a secret bid, the sale was set aside.

The case of Bexwell v. Christie, Cowper, 395, affirmed by our Supreme Court in Staines v. Shore, 16 Pa. 200; Pennock's App., 14 Pa. 446, is so pertinent to the subject, that I quote from it as follows: " The question then is, whether the owner can privately employ another person to bid for him. The basis of all dealings ought to be good faith; for, more especially in these transactions, where the public are brought together upon a confidence that the articles set up to sale will be disposed of to the highest real bidder; that could never be the case if the owner might secretly and privately enhance the price by a person employed for that purpose; yet tricks and practices of that kind daily increase, and grow so frequent that good men give in to the ways of the bad and dishonest, in their own defense. But such a practice was never openly avowed. An owner of goods set up to sale at an auction never yet bid in the room for himself. If such a practice were allowed no one would bid. It is a fraud upon the sale and upon the public. The disallowing it is no hardship upon the owner. For if he is unwilling his goods should go at an under price, he may order them to be set up at his own price and not lower; such a direction would be fair; or he might do as was done by Lord Ashburnham, who sold a large estate by auction; he had inserted in the conditions of sale that he himself might bid once in the course of the sale, and he bid at once £15,000 or £20,000. Such a condition is fair, because the public are then apprised, and know upon what terms they bid. In Holland it is the practice to bid downwards. The question then is, is such a bidding fair? If not, it is no argument to say it is a frequent custom. Gaming, stock-jobbing, and swindling are frequent. But the law forbids them all. Suppose there was an agreement to abate so much, which is the case where goods are sold by one person in the trade to another; they abate sometimes 10 or 15 per cent. Such an agreement between the owner and bidder, at a sale by auction, would be a gross fraud. What is the nature of a sale by auction? It is, that the goods shall go to the highest real bidder. But there would be an end of that if the owner might privately bid upon his own goods. There is no contract with the auctioneer. He is only an agent between

the buyer and seller.   He may fairly bid for a third person who employs him, but not for the owner." In Wheeler v. Collier, 1 Moody & Matkin, Lord TENTERDEN, chief justice, said: " If the owner of an estate put up for sale by auction employ a person to bid for him, the sale is void, although only one such person be employed, and although he is only to bid up to a certain sum ; unless it is announced at the time that there is a person bidding for the owner."

An excellent review of these various authorities appears in the case of Towle v. Leavitt, 23 New Hampshire, 360, wherein the court adopted the remarks of chancellor KENT, 2 Kent Co., *539, as the true doctrine, to wit, that " in sound policy no person ought in any case to be employed secretly to bid for the owner against a bona fide bidder at a public auction.   It is a fraud in law on the very face of the transaction, and the owner's interference and right to bid ought to be intimated in the conditions of sale."

In support of all these findings, and especially the fifth, I cite Staines v. Shore, 16 Pa. 200, wherein the Supreme Court held that it made no difference that without the bids of employed puffers the property would go for less than its value, and commenting upon the ruling of the court below, said : " The ruling judge instructed the jury that if the horse was actually worth the sum to be paid for him, the buyer got the value of his money and could not have been defrauded.   The fallacy of the principle is in assuming that there is a standard of value independent of the wishes and wants of the bidders, and that every man is willing to buy by it. . . . A man is defrauded whenever he is incited by artful means to bid more than he otherwise would. He has a right to buy at an under value, where the necessities of the owner compel him to sell; and whenever the price is ever so little enhanced by a secret contrivance, he is cheated.   A sale by auction presupposes a sacrifice, or at least a willingness to sell for what can be had; but should the vendor stick for the last penny, it would be idle to set the property up, because his price could be as readily obtained at private sale. . . . If the owner proposes to sell without reservation as to price, let him openly reserve a right to bid.   For no fair purpose is the employment of a puffer necessary ; and it must vitiate every sale in which recourse is had to it."

Rigg v. Schweitzer, supra, does not rule this question against the plaintiff. It decided that one of four executors, under the will, interested in the distribution of a decedent's estate, had a right to bid and buy at the sale held by all of the executors, subject to the power of disaffirmance in the heirs or creditors. It was not the case of an actual owner selling his own real estate. The parties were trustees. They stood in no relation of trust or confidence to the bidders at their sale: Hamilton's Est., 51 Pa. 58. In the present case the parties are the actual owners, and, as we have seen from the above authorities, if the owner employs a person to bid for him, although he is only to bid up to a certain sum, the sale is void ; and to employ one secretly to bid for the owner against a bona fide bidder at public auction is fraud in law on the very face of the transaction. I therefore find that under the facts the sale was void; that the plaintiff has sustained his bill, and is entitled to the equitable relief therein prayed for.

And now, to wit, April 13, 1896, it is ordered, adjudged, and decreed,

1. That the sale so made to John A. Flannery, the plaintiff, of the property described in the bill is adjudged void and of no effect, and imposes no obligation whatever upon the plaintiff, John A. Flannery.

2. That the agreement dated October 26, 1895, and executed by the plaintiff for the purchase of the said property, is declared and adjudged void and of no effect, and is to be delivered up to be canceled.

3. That a decree be entered against the defendants that they repay to the plaintiff the sum of $380.50, with interest from October 26, 1895, being 10 per centum of the purchase money of said property deposited as aforesaid.

4. That an injunction be issued perpetually restraining the defendants from selling the said property for any failure on the part of the plaintiff to comply with the said articles of agree- ment and from otherwise harassing the plaintiff with respect to the said transaction.

5. It is further ordered, adjudged, and decreed that the defendants pay the costs. [4]

*Errors assigned* were (1) ruling on evidence, quoting the bill

of exceptions ; (2) the fifth finding of fact ; (3) in finding that the sale was void ; (4) the decree of the court, quoting it.

*Isaac Hiester*, with him *Stephen M. Meredith*, for appellants.— There is no principle of law which prevents one of several joint owners from bidding on the common property with the bona fide intention of becoming the purchaser thereof and of paying to the other co-owners their respective shares of the purchase money. Such a bidder is not a puffer but is a real bidder, bidding on his own account, to obtain the property for himself at as low a price as he can, and intending to comply with his bid: 2 Bouvier's Dict., 486 ; Doolubdass v. Ramloll, 3 Eng. Law & Equity Rep. 39, 47 ; Rigg v. Schweitzer, 170 Pa. 549.

*C. H. Ruhl*, of *Ermentrout & Ruhl*, for appellee.—On a question of fraud great latitude is always allowed. Every fact or circumstance from which a legal inference of fraud may be drawn is admissible: Cover v. Manaway, 115 Pa. 346 ; Com. v. Stevens, 178 Pa. 543.

The auctioneer was the agent of both the defendants during the sale of this property, and his acts in the conduct of the sale as to third parties were the acts of both defendants and both are bound by them: Warlow v. Harrison, 1 Ell. & Ell. 309.

The secret arrangement between the defendants as stated in their answer to plaintiff's bill, resulting in the agreement to put the property up at public sale, each reserving the right to bid, was in the absence of notice thereof to third parties a fraud upon them ; especially so in view of the fact that they caused an announcement to be made that it would be sold "without reserve :" Thornett v. Haines, 15 Meeson & Welsby, 372 ; Blygh v. Samson, 137 Pa. 368.

The employment of a bidder by the owner of property at his own sale is fraudulent and avoids the sale at the option of the vendee: Veazie v. Williams, 8 How. 154 ; Bexwell v. Christie, Cowp. 395 ; Yerkes v. Wilson, 81* Pa. 10 ; Rigg v. Schweitzer, 170 Pa. 549 ; Pennock's App., 14 Pa. 446.

PER CURIAM, March 15, 1897 :

The correctness of the decree, declaring the sale to plaintiff void on the ground of fraud, etc., is so amply vindicated in the

opinion of the learned president of the common pleas, that discussion of the question presented by this appeal is unnecessary.

The offer to show in substance that puffing or fictitious bidding at public sales is and has been customary, etc., was rightly rejected.    Such a fraud, as was charged and established by ample proof in this case, cannot be legalized by custom.    The findings of fact, recited in the second specification, are fully sustained by the evidence and must be accepted as verity.    The conclusion drawn therefrom that the sale in question was void and should be so decreed, necessarily followed.

On the facts properly found and for reasons given by the learned trial judge there is no substantial error in the decree or the proceedings leading up thereto.

Decree affirmed and appeal dismissed at appellants' costs.