CLARENCE W. ROWLEY, assignee, *vs.* MICHAEL F. D ARCY.
MICHAEL F. D'ARCY *vs.* CLARENCE W. ROWLEY, assignee.

Suffolk.     November 18, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Insolvency.   Auction.   Evidence.*

A sale by an assignee in insolvency of property of which the assignee has the title,
openly offered for sale and sold to the highest bidder at a time and place duly
appointed and announced, is a sale by auction, although some of the creditors
of the insolvent retired from the room for consultation between their bids and
a period of four hours elapsed between the times of putting up and selling the
property.

Where a purchaser, at an auction sale by an assignee in insolvency, seeks to avoid
his purchase on the ground that certain creditors fraudulently increased the
price by fictitious bids, he cannot introduce evidence that the assignee before
the sale proposed that he, controlling the auction sale, should sell the property
to the purchaser at a nominal price, if the purchaser would make an additional
payment for the benefit of the assignee and certain creditors.

A sale at auction by an assignee in insolvency of property of the insolvent estate
is not voidable on the ground that the price was enhanced by means of fictitious
bids agreed upon by certain creditors, if the alleged fraud was not known to the
assignee, and, for aught that appears, each of the bids alleged to be fictitious
might have been enforced against the bidder had it been the highest.

TWO ACTIONS OF CONTRACT, one by the assignee in insol-
vency of copartners constituting the firm of Berkman Brothers,
to recover a balance alleged to be due from the defendant under
a contract in writing, and the other by the defendant in the first
named action to recover back the money theretofore paid under
the contract.   Writs respectively in the Superior Court dated
December 10, 1898, and in the Municipal Court of the City of
Boston, dated November 26, 1898, afterwards in the Superior
Court by appeal.

In the Superior Court the cases were tried together before
*Pierce,* J.   The contract sued upon was as follows:

" Law offices of C. W. Rowley, 373 Washington Street, Bos-
ton, Mass.   Nov. 23, 1898.   I offer to C. W. Rowley, Assignee
of Berkman Bros., $6500.. Six thousand five hundred dollars, for
the rights of the Berkman estate in the Willow Park 2d mort-

gages of a face value of $14,500, assigned to me as collateral security for a loan of $11,500. And said Rowley, Assignee, accepts said offer. M. F. D'Arcy, Clarence W. Rowley, Assignee."

Rowley was the assignee appointed by the Court of Insolvency for the county of Suffolk of the firm of Berkman Brothers. At the time of Rowley's appointment D'Arcy held four second mortgages upon certain real estate situated in Willow Park in Boston, of a face value of $14,500, which had been assigned to him by the Berkmans within four months of the filing of the petition in insolvency. The assignee alleged that the mortgages were held as collateral security for a debt of the Berkmans to D'Arcy upon which there was a balance remaining unpaid of about $3,000, that these mortgages had been transferred by the Berkmans to D'Arcy in fraud of creditors, and that this transfer was also a preference and fraudulent as against the assignee. A bill in equity was pending, brought against D'Arcy after the insolvency, and before the appointment of the assignee, to restrain him from negotiating or foreclosing these mortgages and seeking to obtain them for the creditors. The assignee was appointed on October 7, 1898, and on November 23, 1898, sold to D'Arcy the rights of the estate in the second mortgages at the sale referred to in the opinion and held to be a sale by auction. D'Arcy paid $1,000 at the time of the sale, refused to pay the balance, and brought his action to recover back the $1,000. The assignee brought his action to recover the balance of the purchase price.

The judge ordered the jury to find for Rowley, the assignee, in the action in which he was plaintiff in the sum of $5,500 and interest, and also to find for him in the action in which he was defendant. D'Arcy alleged exceptions.

*F. N. Nay*, for D'Arcy.

*G. R. Swasey & C. W. Rowley*, for the assignee.

BRALEY, J. The principal question in these cases is whether the defendant D'Arcy can be held to pay any further sum under a written contract of sale made between the parties, or is entitled to recover back what he has already paid, on the ground that he bought the property at auction, at which unknown to him fictitious bids were made to raise the price, and in consequence of which he was deceived and defrauded.

As a verdict was ordered for the assignee the evidence is to be considered in the light most favorable to this contention.

It was understood by the parties to these suits that there was to be a final sale of the rights of the debtors in the property described in the contract, to be held at the office of the assignee, and at the time appointed they and other creditors of the debtors attended. The property was offered for sale by the assignee and bids were called for, and made by different persons. It appears that in response to this call by the assignee some of the creditors would bid, then the bidding would cease for a time, and they would leave the room apparently for consultation between themselves; after which they returned and bidding would be resumed.

All the proceedings appear to have been conducted with great deliberation and a period of four hours elapsed between the time when the property was put up and when it was sold.

The conduct of the bidders and the manner of bidding does not seem to have aroused at the time any suspicion in the mind of D'Arcy that the sale was not being fairly conducted, and it is to be noted in this connection that during all this period his counsel was present to assist and advise him, so far as advice might be deemed necessary.

Finally the successful bid or offer was made by the buyer and accepted by the assignee in writing; and this was followed by, and formed the basis of, the contract in suit.

While some of the conditions that attended the sale are unusual yet the characteristic features of a sale by auction are found. At a time duly appointed, and announced, property to which the vendor had a good title is openly put up, and offered for sale, bids are made, and it is sold to the highest bidder. Such a sale must be considered and treated as having been made by auction.

It was clearly the purpose of the assignee and of the creditors present and who made bids, to realize for the property the highest obtainable price; and in good faith, by proper means, they might lawfully carry out this purpose in order to prevent a sacrifice of the estate of the insolvent debtors. *Phippen* v. *Stickney*, 3 Met. 384, 388, 389.

But a combination by them to enhance the price to be obtained by fictitious bids at a sale to be made without reserve to the

highest bidder, would be a fraud practised upon those who bid without knowledge of the arrangement, and give to the buyer a right to avoid the sale.  *Curtis* v. *Aspinwall*, 114 Mass. 187.

From the testimony of one of the witnesses it might be inferred that some of the bids made by the creditors and before the final bid of the defendant D'Arcy to whom the property was struck off, were of this character; and in his answer in the first case which must be taken to state the position taken by him at the trial, he relies upon this by-bidding to avoid the sale.  But he does not aver that these puffers were employed by the assignee, or acting in his behalf, or that their conduct was known to him.  He alleges that they were employed by the creditors of the estate in whose behalf the property was put up and offered for sale.

His offer of proof of evidence which was excluded * does not aid him; for if the evidence offered had been admissible under the pleadings and is taken most strongly against the assignee, while he might if the offer were true be found guilty of grave misconduct in his office, there is no statement from which it can be specifically inferred that by-bidders were to be employed by him, or with his knowledge or consent allowed to bid at the auction.

If the scheme outlined was to be put through, by-bidding would have been fatal to its success, as it was not desired to enhance the price of the property to be sold, but the purpose was to enable the defendant D'Arcy to get it as cheaply as possible, provided he made certain payments to the assignee.

As assignee, the plaintiff Rowley held by a good title the property of the debtors to be properly administered and applied in their behalf to the payment of their debts, and also repre-

---

* The offer of proof referred to was in substance, that at certain interviews Rowley stated to D'Arcy, that he could and would control the auction sale at which he proposed to sell the Willow Park rights, so that D'Arcy could buy them at a nominal price, provided Rowley should receive an additional sum from D'Arcy of $1,000, to go in part to himself, in part to one Danishevsky, in part to one Pinkoffski, and possibly to a few others of the creditors of Berkman Brothers; that at this time Rowley stated that the date had been set for the auction sale; and that this was the sale which subsequently was appointed for November 15 and adjourned to November 23, 1898, at which time the fraud complained of was alleged to have been perpetrated.

sented the rights of the creditors that all the property of the debtors should be ascertained, turned into money, honestly accounted for, and paid over to them to the extent of the indebtedness proved, less the proper expenses of administration and distribution ; and in all suits and proceedings in which the estate was involved it was his duty to appear, represent, and act for them.

Upon the assignment being made to him of the property of the insolvent debtors, he was vested with an absolute title to their estate which he could sell either by public auction, or at private sale so as to convey a good title to the purchaser. Pub. Sts. c. 157, §§ 46, 50. *Tuite* v. *Stevens,* 98 Mass. 305. *Crowley* v. *Hyde,* 116 Mass. 589.

The control of the sale was wholly in his power and under his direction, and no other person on the evidence could legally release any bidder from the obligation incurred by his bid. And the creditors who made the fictitious bids could not as between themselves provide immunity from any risk of being held personally liable for their several offers.

For anything that appears in the case each bidder could have been required by the assignee to take and pay for the property, if it had been struck off to him.

All of the evidence is recited in the exceptions and fails to show any misrepresentations by the assignee, or that he knew of and participated in the conduct and purpose of the creditors at any time before the final bid was made and accepted, and the written contract executed and delivered. The essential element of fraud which must be shown on the part of the vendor, or of the person who absolutely controls and directs a sale by auction in order to avoid it, is absent.

And as the assignee is not shown to have either procured or assented to the fictitious bids, the sale is not voidable on the part of the buyer, and must stand. *Peck* v. *List,* 23 W. Va. 338, 388. *National Bank of Metropolis* v. *Sprague,* 5 C. E. Green, 159, 165. *McMillan* v. *Harris,* 110 Ga. 72. *Towle* v. *Leavitt,* 23 N. H. 360. *Rigg* v. *Schweitzer,* 170 Penn. St. 549. *East* v. *Wood,* 62 Ala. 313. *Veazie* v. *Williams,* 8 How. 134.

*Exceptions overruled.*