## WILLIAMS et al. v. HOGUE.

(Circuit Court of Appeals, Fourth Circuit. November 28, 1914.)

No. 1202.

BANKRUPTCY ☞269—SALES OF PROPERTY—RELIEVING FROM BID—PUFFING.

It was not ground for releasing a person from a bid made at a public sale of a bankrupt's property that the only other bidder was a puffer, employed by persons who took advantage of the successful bidder's well-known desire to buy the property to run up the bidding and oblige him to pay more than the property was worth, and more than any other bona fide bidder would pay, where such other bidder made no fictitious bid,

under the belief, with good reason, that he would not be held personally liable for his bids, and no assurance of immunity from any person having the power to make good the assurance had been made; and hence an application to be released from the bid was properly denied, where it failed to show any such assurance or belief.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. ☞269.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

In the matter of Benjamin G. Williams, bankrupt; George R. Hogue, trustee. From an order confirming an order of the referee, denying an application to be released from a bid at a sale of the bankrupt's property and ordering a resale in default of compliance with such bid, the bankrupt and another appeal. Affirmed.

Neely & Lively, of Fairmont, W. Va., for appellants.

E. F. Morgan, of Fairmont, W. Va., and J. M. Ritz, of Wheeling, W. Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. Under an order of sale made in bankruptcy (In re Benjamin G. Williams), the property known as Skinner's Tavern," which had been divided into three parcels, was sold at public auction and bid off by Charles T. Herd for $75,525. A resale was made by George R. Hogue, trustee, in pursuance of an order which required "offering said property for sale both in the piece and in the bulk, and selling the same in whichever way he was able to obtain the most money therefor." The property was then first put up as a whole, and after competitive bidding by Herd and the bankrupt, Williams, commencing with Herd's repetition of his former bid of $75,525, was knocked down to Williams, the bankrupt, at $75,550. It was then offered in parcels, and No. 1 was bid off by Herd at $14,000; No. 2 and 3 by Williams at $17,050 and $44,600; the aggregate being $75,650. Williams then insisted that he was entitled to hold his bid of $75,550, or at all events that he should have the two parcels bid off by him. The trustee, nevertheless, offered the property again as a whole, and after competition between Herd and Williams it was knocked down to Williams at $85,750. The trustee having reported the sale at $85,750, by petition, Williams set up his claim to take the property at his former bid for the whole, and insisted that in any event he should be allowed to hold his separate bids for the two parcels struck off to him. Williams further set up in his petition that he should be released from his bid of $85,750 because:

"Herd, who was the only bidder at such sale of September 18, 1912, was not a bona fide bidder, but a puffer employed by designing men, who took advantage of the well-known desire of your petitioner to buy said property, and of the contracts which your petitioner has entered into the Schmulbach Brewing Company, above mentioned, to run up the bidding at such sale, so that your petitioner would be obliged to pay more for said property than it was worth and more than any other bona fide bidder would pay."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The referee refused to consider the petition, and ordered a resale in default of compliance with the bid of $85,750, and the District Court confirmed his action.

The only point made in the argument on appeal is that there was error in holding Williams to his bid in the face of his allegation that Herd was "a puffer employed by designing men." The law thus laid down in Peck v. List, 23 W. Va. 395, 48 Am. Rep. 398, is well established:

"It will be observed that in most of the cases where there have been by-bidders, they were employed by the owners of the property about to be sold at auction; that is, were puffers in the strict sense of the word. But it is obviously unimportant whether the by-bidder is employed by the owner of the land or by some one else, having a pecuniary interest in the auction about to be made, and who stands in such a relation to it that he can make good his assurances to the by-bidder that he shall not be held responsible for his bid, if it happens to be the highest bid made. The real essence of the fraud is not that the owner is bidding for the property, but it consists in the fact that a by-bidder, pretending to be a bona fide bidder, deceives honest bidders, raises the price of the property by fictitious bids, increasing competition, while he himself has good reason to believe, and does believe, that he is secure from any risk of being held personally liable for his bids. It is immaterial from whom he derives this assurance of immunity, provided the party giving the assurance expressly or impliedly has the power either legally or practically to make good the assurance."

See Veazie v. Williams, 8 How. (49 U. S.) 134, 12 L. Ed. 1018; Rowley v. D'Arcy, 184 Mass. 550, 69 N. E. 325, 64 L. R. A. 190.

There was no allegation that Herd made fictitious bids, while he believed with good reason that he was secure from risk of being held personally liable for his bids, or that he had any assurance of immunity from any person having the power to make good the assurance. Therefore the allegation of the petition, taken as true, was not sufficient to relieve the purchaser.

Affirmed.