**STORMY WEATHERS, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., Receiver for Dartmouth Bank, Defendant.**

Civ. No. 91–529–M.

United States District Court, D. New Hampshire.

Sept. 30, 1993.

Daniel J. Kalinski, Manchester, NH, for plaintiff.

John A. Rachel, Manchester, NH, for defendant.

### MEMORANDUM ORDER

McAULIFFE, District Judge.

This case arises out of an auction sale of real estate owned by the former Dartmouth Bank (the "Bank"). Plaintiff, the successful bidder on property offered at the auction, brought suit in state court challenging the bidding tactics used by the Bank. Defendant FDIC, acting as receiver for the Bank, removed the case to this court, and now moves for summary judgment. The FDIC also moves to expunge a record from the Hillsborough County, New Hampshire, Registry of Deeds.

The FDIC's motion for summary judgment turns on whether an owner's reservation of

the right to bid on his or her own property at auction includes the right to employ unidentified agents to bid in a manner designed to "stimulate" bidding by others attending the auction.

Oral argument was held on the pending motions on August 30, 1993. For the reasons set forth below, the FDIC's motion for summary judgment is denied, as are its other pending motions.

## I. *Background*

On June 29, 1991, Dartmouth Bank conducted a public auction to dispose of certain inventory property it owned. The property was advertised as "reserve," meaning the Bank had set a price below which it would not be sold. The auction's terms included notice to prospective bidders that the Bank "reserve[d] the right to bid and purchase or reject all bids."

A principal of the plaintiff corporation, Mr. Sowa, attended the auction on its behalf. Mr. Sowa bid on a parcel located at 214 St. Anselms Drive in Goffstown, New Hampshire, along with others in the audience. Despite the notice, Mr. Sowa says he was not aware, at the time, that an agent of the owner was bidding against him. Plaintiff asserts that after Mr. Sowa bid $140,000 for the property other bidders dropped out, leaving the Bank's agent and plaintiff as the only remaining bidders. The FDIC disputes this assertion, vaguely referring to an "independent third party" who bid on the property but withdrew from the bidding "at some point during the auction."[1] Defendant's Motion for Summary Judgment at 3, Exhibit 1, paras. 10–13. Mr. Sowa continued to bid above $140,000. His eventual bid of $170,000 was accepted by the auctioneer.

A purchase and sale agreement was executed based on Mr. Sowa's successful bid. It required Mr. Sowa or his assignee to close on the property within sixty days of June 29, 1991, or forfeit the required earnest money deposit of $7,500. When he later learned that an agent of the Bank had driven his bid upward Mr. Sowa declined to close on the

property. Stormy Weathers, Inc. filed this action, as assignee, claiming that the Bank engaged in collusive bidding practices in violation of N.H.Rev.Stat.Ann. ch. 358–G:2 II (1988).

The FDIC took over the assets of Dartmouth Bank as receiver on October 10, 1991, and removed the case to this court. On or about June 17, 1992, plaintiff recorded the purchase and sale agreement at the Hillsborough County Registry of Deeds, presumably to put prospective buyers of the property on notice of its competing claims. Subsequently, the FDIC sold the property to a third party who apparently had record notice of this pending dispute.

## II. *Defendant's Motion for Summary Judgment*

Summary judgment is appropriate only when the record reveals "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, including all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990). Here, the court must afford plaintiff the benefit of every reasonable inference.

### A. *Collusive Bidding*

The FDIC argues that it is entitled to summary judgment because under the terms and conditions of sale the Bank plainly reserved its right to bid and purchase, or to reject all bids. Having reserved those rights, it says, all bidders were fairly and fully informed at the outset that the Bank might be involved in stimulating bona fide bidders by entering bids on its own behalf. Plaintiff argues in opposition that Mr. Sowa was deceived and misled into bidding above $140,000 to his final bid of $170,000 by the Bank's active bidding through unidentified agents posing as bona fide bidders.

---

1. The FDIC does not state at what point during the auction this independent third party submitted bids or whether his or her bid was the last bid before plaintiff's final bid.

In New Hampshire, collusive bidding during an auction is statutorily prohibited. *See* N.H.Rev.Stat.Ann. ch. 358–G:2 II.[2] The statute defines "collusive bidding" as:

> a practice whereby the auctioneer or his agent and any person causes fictitious bidding during an auction for the purpose of misleading or stimulating other persons who are bidding in good faith.

N.H.Rev.Stat.Ann. ch. 358–G:1 II.

The critical issue here is whether the Bank's successive bidding on its own property through undisclosed agents violated the prohibition against collusive bidding set out in N.H.Rev.Stat.Ann. ch. 358–G:2 II. "Fictitious bidding" is not defined by the statute, and the New Hampshire Supreme Court has yet to construe the term. Nor has that court expressly decided what level of disclosure is required of owners and auctioneers under the statute, or whether any degree of disclosure will validate an otherwise fictitious bid or collusive bidding practice.

■ When a state court has not directly ruled on a state issue under consideration, "it becomes [the federal court's] duty to [predict] how the state's highest tribunal would resolve such matters." *Moores v. Greenberg,* 834 F.2d 1105, 1107 (1st Cir.1987). When a statutory term is not defined in the statute, a court should construe the term in accord with its plain or ordinary meaning. *See Smith v. United States,* —— U.S. ——, —— ——, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Furthermore, where a statute borrows a term of art whose interpretation is derived from "the legal tradition and meaning of centuries of practice," it is presumed, absent some indication to the contrary, that the statute adopts the accepted customary definition of the term. *Molzof v. United States,* —— U.S. ——, —— —— ——, 112 S.Ct. 711, 716, 116 L.Ed.2d 731 (1992). New Hampshire's principles of statutory construction are consistent with these standards. *See Concord Steam Corp. v. City of Concord,* 128 N.H. 724, 519 A.2d 266 (N.H.1986). In these circumstances, it is appropriate to consider how "fictitious bidding" was understood at common law.

■ For centuries, the propriety of undisclosed agents bidding at auction on behalf of sellers has given rise to much dispute. These undisclosed agents have been known over the years by colorful nicknames such as "puffers," "by-bidders," "cappers," "decoy ducks," and "white bonnets." They bid with no intention of becoming the purchaser, but only for the purpose of stimulating higher bidding by others attending the auction. The United States Supreme Court has described bids cast by such puffers or by-bidders as "fictitious," in contrast to "real" bids cast by bona fide bidders. *See Veazie v. Williams,* 49 U.S. 134, 151, 12 L.Ed. 1018 (1850). A bid is "fictitious" if the person procuring it—generally, the owner or auctioneer—has the legal authority to release the bidder from the obligation incurred by his bid. *See Rowley v. D'Arcy,* 184 Mass. 550, 554, 69 N.E. 325 (1904); *Williams v. Hogue,* 219 F. 182, 184 (4th Cir.1914). Generally, puffers or by-bidders are secured from financial risk through secret prior agreements with the seller, releasing them from any obligation to actually purchase the property on which they bid. *See Nicholson v. Clark,* 802 S.W.2d 934, 937 (Ky.Ct.App. 1990) (citing 7 Am.Jur.2d *Auctions and Auctioneers* § 22 (1980)); *see also Bexwell v. Christie,* 98 Eng.Rep. 1150 (1776).

This characterization and understanding of "fictitious bidding" is consistent with New Hampshire's common law of collusive bidding. *See Towle v. Leavitt,* 23 N.H. 360 (N.H.1851) (discussing English and U.S. common law). In fact, there appears to be no genuine disagreement about the term's meaning, and the historical understanding of "fictitious bidding" appears to be consistent with its use in a number of modern state statutes prohibiting the practice. *See, e.g.,* Mass.Ann. Laws ch. 100, § 9(f) (1993);

---

**2.** N.H.Rev.Stat.Ann. ch. 358–G:2 II provides that "No person shall enter into and participate in collusive bidding practices."

Wash.Rev.Code § 18.11.240(2)–(3) (1991); Haw.Rev.Stat. § 445–24 (1992).[3]

In this case defendant candidly concedes that the Bank employed undisclosed agents to bid on its property without risk, for the purpose of stimulating other good faith bidders to offer higher bids. John L. Allen, the Bank's attorney, wrote to plaintiff's counsel on August 13, 1991, confirming the Bank's purpose:

> Finally, I specifically announced prior to the sale that, in the event bidding failed to reach desired levels by the Bank, the Bank reserved the right to bid on and/or reject bids relative to each property. . . .

> . . . Full disclosure of Bank participation was made although *the Bank reserved the right not to announce its minimums and to protect itself by bidding in order to maximize its possible return on the sale, a strategy I believe prompted by the Bank's duty to its shareholders, depositors and federal regulators.*

Plaintiff's Exhibit 1, Letter to Daniel Kalinsky (emphasis added). Accordingly, the agents' bids were "fictitious," as that term was understood at common law, and as used in New Hampshire's statute. The FDIC maintains, however, that even if the Bank's bids were technically "fictitious" under N.H.Rev.Stat.Ann. ch. 358–G, its conduct did not constitute "collusive bidding" within the meaning of New Hampshire's statute because the Bank explicitly reserved the right to bid on and purchase its own property. Because its advertisements and announced terms of sale put plaintiff and all other bidders on notice of its intent to bid, the Bank argues that its agents' bids were not and could not have been "misleading" within the meaning of the statute. The relevant statute, of course, prohibits fictitious bids made for the purpose of misleading *or* stimulating other persons who are bidding in good faith. *See* N.H.Rev.Stat.Ann. ch. 358–G:1 II.

Although the New Hampshire Supreme Court has not addressed the general subject of auctions for quite some time, its 1851 opinion in *Towle v. Leavitt,* 23 N.H. 360 (N.H.1851), is a reliable predictor of how it would likely resolve the issues pending in this case. If the New Hampshire Supreme Court considered the issue of collusive bidding today, it would probably reaffirm the position it took in *Towle v. Leavitt* more than a century ago:

> In sound policy, no person ought, in any case, to be employed secretly to bid for the owner against the *bona fide* bidder at a public auction. . . . And after the best consideration which we have been able to give the subject, it appears to us, that this is the true doctrine, and that sound morals and good faith between man and man, evidently require that by-bidding should receive no countenance from any legal tribunal. Fair, open-handed honesty ought to pervade all dealings, and all parties should, so far as may be, meet on equal terms in their bargains and sales. . . . If it be said that the property may be sacrificed for the want of bidders, as is declared in some of the cases in equity; the answer is that the owner may withdraw it before the sale commences, or he may set it up at a specified sum, or he will announce that he will reserve the right to make one bid himself. . . . The owner of the property has no right to complain at such a course, because it is the only course that comports with the truth.

*Towle v. Leavitt,* 23 N.H. 360, 371–72 (N.H. 1851) (citations omitted). In rejecting the practice of puffing and by-bidding, the New Hampshire Supreme Court recognized the distinction between successive fictitious bids intended to stimulate others to bid higher, on the one hand, and one bid entered to prevent "sacrifice" of the property at an unreasonably low price, on the other. *See also Veazie v. Williams,* 28 F.Cas. 1124, 1133 (C.C.D.Me. 1845) (No. 16,907) (Ware, J., dissenting) *rev'd on other grounds,* 49 U.S. 134, 12 L.Ed. 1018 (1850). Historically, the practice in New Hampshire and elsewhere has been to permit an owner *one* bid, effectively allowing him or her to either withdraw the property from

---

**3.** At least twelve states, in addition to New Hampshire, have enacted statutes prohibiting the use of puffers or by-bidders to artificially enhance the sale price of property at auction. Several of these statutes use the term "false bids" instead of "fictitious bids."

sale, or establish a minimum sale price. *See Towle v. Leavitt, supra.*

Successive bidding at auction by undisclosed agents of the owner or auctioneer, however, is a practice that is both inconsistent with notions of "open-handed honesty" and contrary to N.H.Rev.Stat.Ann. ch. 358–G:1 II. The practice is not necessary to prevent an inequitable sacrifice of the property, nor to set a price below which the property will not be sold. An owner's legitimate interests can be fully protected during an auction by the offering of one bid, or by setting a reserve price at the outset, or by reserving the right to reject all bids.

Successive bidding by an owner through undisclosed agents is required only if the owner seeks something more than protection against sacrifice. It is a practice obviously designed and intended to stimulate bona fide bidders to bid higher than they otherwise would, but for the misleading impression that market demand for the property (and hence its value) is greater than it actually would be in an unmanipulated auction. Deception is the motivating force behind the practice. Bona fide bidders are unquestionably misled by the creation of false market demand and by a puffer's pretense that his bid represents a genuine willingness to assume financial risk when in fact the puffer's bid is illusory and the perceived competition for the auctioned property disingenuous. The Bank's conceded use of unidentified agents to bid on its property "in order to maximize [the Bank's] possible return on the sale" is precisely the type of "misleading" and "stimulating" practice prohibited by the statute. *See* Letter to Daniel Kalinsky, *supra.*

■ Where an owner desires to protect his or her legitimate interests in avoiding an inequitable sacrifice of the property at auction, "open-handed honesty" demands, at a minimum, that an owner give notice that the property is offered "with reserve," or that he or she may personally cast one bid on the property or a designated person in the audience may cast one bid on his or her behalf. Under such circumstances, the owner's bid would neither "stimulate" nor "mislead" bona fide bidders. *See Towle v. Leavitt, supra;* N.H.Rev.Stat.Ann. ch. 358–G:1 II. *See also*

*Wheeler v. Collier,* 173 Eng.Rep. 1103, 1104 (1827).

At oral argument, the FDIC characterized by-bidding as a routine practice designed to enhance the psychology and atmosphere of an auction. The practice was also likened to an accepted form of direct negotiations between seller and buyer, with each successive bid by the owner's agent equating to the simultaneous rejection of a prior bid and posting of a counter-offer. The court is constrained to disagree. By-bidding or puffing at an auction is not a statutorily acceptable form of negotiation, particularly where the identity of the Bank as a negotiating party is not clear to the other parties to the "negotiation," the bona fide bidders. Those bidders would be "negotiating" under the misapprehension that the Bank's agents were in fact competing bona fide bidders rather than the owner's surrogates.

■ The FDIC also argues that it is entitled to summary judgment because an independent third party bid against plaintiff, which activity "legitimized" the auction despite any puffing by the Bank. Defendant's Motion for Summary Judgment at 4. Plaintiff disputes the existence of a third party bidder, but even in the absence of a dispute, summary judgment would be inappropriate unless the FDIC could at least demonstrate that the third party's bids were not influenced by the Bank's fictitious bids. *Towle v. Leavitt,* 23 N.H. at 371 (quoting *Veazie v. Williams,* 28 F.Cas. at 1127 (Story, J.)). No such showing has been made.

■ Finally, whether the final bid obtained from the plaintiff was objectively reasonable is irrelevant. Mr. Sowa undoubtedly thought he made a good bargain at the time, and he was probably content to pay $170,000 for the property, until he discovered that what he believed to be a fair market price was in fact a price influenced by puffing. A bona fide bidder cannot be held accountable for bids based on an owner's fictitious bids "made for the express purpose of running up prices." *Edmunds v. Gwynn,* 157 Va. 528, 544, 161 S.E. 892 (Va.1932); *see also Flannery v. Jones,* 180 Pa. 338, 338, 36 A. 856 (1897).

In summary, under New Hampshire law, contracts based upon auction bids which were stimulated by puffing or by-bidding are voidable as against public policy and as the product of collusive bidding prohibited by N.H.Rev.Stat.Ann. ch. 358–G:2 II. Reservation of the right to bid on one's own property at auction does not entitle the owner to bid successively, that is, deceptively, through undisclosed agents. "[I]f those who wish to have their property sold at auction are not willing that it should be done in a fair, open and honorable way, they must seek other ways of disposing of it." *Towle v. Leavitt,* 23 N.H. at 372.

### B. *Remedies*

■■■ In addition to its arguments on the collusive bidding issue, the FDIC argues that it is entitled to summary judgment on the question of remedies.

Any violation of N.H.Rev.Stat.Ann. ch. 358–G:2 II is an "unfair and deceptive act or practice" and may be redressed by any remedy provided in chapter 358–A, New Hampshire's consumer protection statute. N.H.Rev.Stat.Ann. ch. 358–G:3. Plaintiff seeks damages and other relief under the consumer protection act, N.H.Rev.Stat.Ann. ch. 358–A:10 I, which provides in part:

> Any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper. If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $200, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount. In addition, a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees....

If plaintiff prevails on its collusive bidding claim, it would be entitled to recover a minimum of $200.00, costs, and attorney's fees under the statute. There appears to be a genuine dispute as to material facts related to plaintiff's claim to the property at his last

uninfluenced bid of $140,000. Defendant argues that because the property was reserved at $170,000, and, as a factual matter would not have been sold below the set price, plaintiff would not be entitled to the property in any event. It is not necessary, and it would be inappropriate, to resolve these issues by means of summary judgment.

### III. *Defendant's Motion to Expunge Registry Record*

■■■ Plaintiff recorded the purchase and sale agreement in the Hillsborough County, New Hampshire, Registry of Deeds. The FDIC moves to expunge the record.

The Superior Court issued an injunction in this case, contingent upon plaintiff posting a $5,000 bond. Plaintiff did not post the bond, so the injunction never became effective. But that is not necessarily dispositive of plaintiff's right to record its interest in the property. N.H.Rev.Stat.Ann. ch. 477:3–a provides that:

> Every deed or other conveyance of real estate and every court order or *other instrument which affects title to any interest in real estate* ... shall be recorded at length in the registry of deeds for the county or counties in which the real estate lies....

(emphasis added). The purchase and sale agreement, although arguably ineffective after plaintiff failed to close, is, nevertheless, an instrument affecting title to the property, since it represents plaintiff's continuing contractual claim to the property, albeit at a lower price. At a minimum, the contract created a colorable claim of equitable interest in the property, which claim has yet to be finally determined, subject to the benefits and burdens of N.H.Rev.Stat.Ann. ch. 477:3–a. *See Hawthorne Trust v. Maine Saving Bank,* 136 N.H. 533, 537, 618 A.2d 828 (N.H. 1992). Under the present circumstances, where the Bank sold the property to a third party for value, plaintiff's exercise of its right to protect its claim of interest in the property by recording the agreement was both reasonable and, in hindsight, apparently warranted.

Defendant's motion for summary judgment (document no. 11) is denied, as is defendant's

motion to expunge the registry record (document no. 9).

SO ORDERED.