Board of Auctioneers
No. 2010-535

APPEAL OF HAROLD FRENCH
(New Hampshire Board of Auctioneers)

Argued: May 5, 2011
Opinion Issued: June 30, 2011

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Richard J. Lehmann* on the brief and orally), for the petitioner.

*Michael A. Delaney*, attorney general (*Anthony I. Blenkinsop*, senior assistant attorney general, on the brief and orally), for the New Hampshire Board of Auctioneers.

DUGGAN, J. The petitioner, Harold French, appeals a decision of the New Hampshire Board of Auctioneers (board) sanctioning him with a letter of reprimand and probation for submitting a fictitious bid at an auction. We affirm.

French is a licensed auctioneer in New Hampshire and has conducted auctions since 1976. On December 10, 2009, he attended an auction run by another auctioneer, Stephen Bennett, in Portsmouth and registered as a bidder under his own name. The items for sale included a painting owned by William Noonan. Bennett and Noonan had entered into a contract regarding the auctioning of the painting and set a reserve price of $10,000. However, promotional materials for the auction did not state that the painting had a reserve and Bennett's website advertised the auction as

without reserve. Immediately prior to the auction, Bennett asked Noonan if he would like to remove the reserve and Noonan indicated that he did not wish to do so.

Bennett and French discussed Noonan's painting just before the auction began. Bennett told French about the reserve and asked him to bid on the painting if the reserve price was not met during the normal course of bidding. French agreed to do so. When the bidding price for the painting reached $9,000, he bid $9,500. He later testified before the board that he did not intend to actually purchase the painting, but sought only to protect the reserve and ensure that the painting was sold. There were no further bids on the painting. Bennett indicated to the gallery that the painting was sold and attached French's tag number to the painting. Noonan believed that his painting had been sold because he thought that he had waived the reserve by gesturing to Bennett following French's bid.

Noonan subsequently requested payment from Bennett. However, Bennett told Noonan that the painting did not sell because the reserve was not met. Noonan later filed a complaint with the board, which charged both Bennett and French with misconduct. Following a hearing, the board concluded that French "willingly submitted a fictitious bid during an auction and otherwise engaged in collusive bidding in violation of RSA 358-G:2 and, in turn, RSA 311-B:11, II(c), when he, as detailed in the [b]oard's findings of fact, with knowledge of the reserve, submitted a bid on the painting which he knew was fictitious." Based upon these violations, the board issued a letter of reprimand, the board's lowest form of discipline, and placed French on probation for one year. French filed a motion for reconsideration, which the board denied. This appeal followed.

A party appealing a decision of the board has the burden of proof to show that the decision is clearly unreasonable or unlawful. RSA 541:13 (2007); see also RSA 311-B:11-a, II (2005) (amended 2010) (directing that all appeals from a decision of the board "shall be in accordance with RSA 541"). All findings of the board "upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable." RSA 541:13. Accordingly, we will not set aside or vacate a decision of the board unless we are satisfied by a clear preponderance of the evidence that such decision is unjust or unreasonable. *Id.*

Pursuant to RSA 311-B:11, II(c) (2005) (amended 2010), the board has the authority to discipline a licensed auctioneer for "[a]ny unprofessional conduct, or dishonorable conduct unworthy of, and affecting the practice of, the profession." The board found that French violated this provision because, among other things, he engaged in collusive bidding, contrary to RSA 358-G:2 (2009). French contends that because RSA 311-B:11 (2005)

(amended 2010) does not specifically authorize the board to discipline an auctioneer for a violation of RSA 358-G:2, the board exceeded its authority. We disagree.

While the legislature provided the board with authority to discipline a licensed auctioneer for "unprofessional" or "dishonorable" conduct, the legislature did not further define these terms. Instead, the legislature left it to the board to decide how to interpret and apply this provision. *See* RSA 311-B:3 (providing the board with rulemaking authority to determine how disciplinary actions by the board shall be implemented). In this case, the board properly looked to another chapter, RSA chapter 358-G (2009), which specifically pertains to the regulation of auctions, for guidance in interpreting RSA 311-B:11, II. *See Nilsson v. Bierman*, 150 N.H. 393, 395 (2003) ("We do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme.").

RSA 358-G:2 prohibits the practice of collusive bidding, which is defined as:

> a practice whereby the auctioneer, the seller, or anyone acting on behalf of the auctioneer or seller, causes, employs any person to engage in, or knowingly allows, fictitious bidding during an auction for the purpose of bidding up the price of any goods in competition with bona fide bidders to purchase, or for the purpose of encouraging or enticing bona fide bidders to purchase, or for the purpose of stimulating competitive bidding to purchase. Collusive bidding shall include any use of false bidders, cappers, shills, or by-bidders.

RSA 358-G:1, II. The board concluded that French willingly submitted a fictitious bid in violation of RSA 358-G:2 because he had no intention of purchasing the painting. The board then correctly determined that because a New Hampshire statute prohibits collusive bidding, it is also a form of "unprofessional" or "dishonorable" conduct pursuant to RSA 311-B:11, II(c). Accordingly, the board did not exceed its authority by disciplining French for collusive bidding.

Nonetheless, French contends that even if it was permissible for the board to rely upon RSA 358-G:2, his conduct did not constitute collusive bidding. He argues that the board failed to "identify any facts or evidence supporting a finding that [his] purpose in bidding was 'bidding up the price of any goods.'" Contrary to French's argument, the board specifically found that French "with knowledge of the reserve, submitted a bid on the painting which he knew was fictitious." French also asserts that none of the auction participants could have actually purchased the painting until the

reserve was met, and, accordingly, his bid below the reserve price did not actually cause or entice anyone to bid. However, nowhere in the statute is there a requirement that another auction participant actually bid based upon a fictitious bid. Indeed, the purpose of French's bid was to entice another bidder to bid above the reserve, which is exactly the conduct prohibited by the statute.

French also argues that the board improperly sanctioned him based upon Bennett's conduct. In support of this argument, he directs us to what he characterizes as five "findings of fact" made by the board in its denial of French's motion for reconsideration. These "findings of fact" established, among other things, that the board did not find French's testimony that he sought only to protect the interests of the painting's owner to be credible because: (1) the auction was advertised as a no reserve auction on Bennett's web site; (2) French was not identified as bidding for the house prior to the auction; (3) French and Bennett did not agree upon making a single bid prior to the auction; (4) the bid was fictitious because Bennett had the authority to release French from purchasing the painting; and (5) Bennett sought to deliberately conceal that the painting had not actually been sold.

Even if we were to agree with French that these findings established misconduct only on the part of Bennett, the board did not sanction him based solely upon these findings. Rather, in its initial decision and order, the board concluded that the respondent "willingly submitted a fictitious bid during the auction" because "with knowledge of the reserve, [he] submitted a bid on the painting which he knew was fictitious." The board's conclusion was supported by factual findings that the respondent submitted a bid despite never intending to actually purchase the painting. The board made the five findings, which French now relies upon, in its order on the motion for reconsideration simply to explain why it did not find his testimony to be credible. Later in that order, it again emphasized that it sanctioned French because he engaged in "fictitious bidding during the auction for the purpose of stimulating competitive bidding and enticing a bona-fide bidder to place a bid." Thus, the board correctly sanctioned French for his own role in deceiving other auction participants.

French also suggests that the board improperly relied upon *Stormy Weathers, Inc. v. F.D.I.C.*, 834 F. Supp. 519 (D. N.H. 1993), in which the United States District Court for the District of New Hampshire looked to our decision in *Towle v. Leavitt*, 23 N.H. 360 (1851), and determined that a bank's use of unidentified agents to bid on its property in order to maximize its return on the sale constituted collusive bidding. *Stormy Weathers*, 834 F. Supp. at 523-24. French contends that *Stormy Weathers* actually supports

his argument that bidding once on behalf of the owner is permissible because he bid once solely to prevent the property from being sold at an unreasonably low price.

French is correct that *Stormy Weathers* distinguished between the practice of entering "successive fictitious bids intended to stimulate others to bid higher, on the one hand, and one bid entered to prevent 'sacrifice' of the property at an unreasonably low price, on the other." *Id.* at 523. However, the court reasoned that an owner's interests can be adequately protected by either offering one bid, setting a reserve price at the outset of the auction, *or* reserving the right to reject all bids. *Id.* at 524. While in the absence of setting a reserve price a "designated person in the audience may cast one bid" on the owner's behalf, the court emphasized that the identity of that person must be clear to the other participants. *Id.* Here, not only did the painting's owner set a reserve price, which was sufficient to protect the owner from a sale at an "unreasonably low price," but French also fictitiously bid without the knowledge of the owner or any of the other auction participants.

▮ Finally, French attempts to justify his conduct based upon a provision of the Uniform Commercial Code, RSA 382-A:2-328(4) (2011), which provides that:

> If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale.

French reads this provision as permitting an auction participant to bid on the seller's behalf. Even if we were to agree with French's interpretation, this section is inapplicable here as the seller, Noonan, did not bid on his own property or procure such a bid. Rather, Bennett, the auctioneer, procured a bid on Noonan's behalf, and did so without Noonan's knowledge or consent and without notice to other bidders at the auction. Moreover, here there was no buyer to whom the statutory remedy could apply. Accordingly, we are unpersuaded by French's argument.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.